UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
COLLETTE CAMPBELL, *Administrator*
*Representative of the Estate of Willie*
*Campbell, Deceased,*

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAR 0 2 2020 ★

BROOKLYN OFFICE

Plaintiff,

**REPORT AND RECOMMENDATION**
**18 CV 5354 (MKB)(LB)**

-against-

WE TRANSPORT, INC. *a New York*
*Corporation*, and UNIMERICA LIFE
INSURANCE COMPANY OF
NEW YORK, *a New York*
*Corporation,*

Defendants.
-----------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

*Pro se* plaintiff, Collette Campbell, brings this action against defendants, Unimerica Life

Insurance Company of New York ("Unimerica") and WE Transport, Inc. ("WE Transport"),

alleging violations of her rights under the Employee Retirement Income Security Act of 1974 as

amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiff seeks to recover life insurance benefits

she claims are owed to her as the administrator of her brother Willie Campbell's Estate under an

employee benefits plan established by Willie's employer, WE Transport.[1] Defendants move for

---

[1] Plaintiff is the sister of the deceased, Willie Campbell, and the aunt of his adopted children, Jeanelle Owen (Campbell), Takia Campbell, Bruce Campbell, and Bayquan Campbell. As they share the same last name, the Court refers to everyone by their first names.

Plaintiff brings this action as "Administrator Representative of the Estate of Willie Campbell." However, plaintiff cannot proceed *pro se* on behalf of Willie's Estate. See Guest v. Hansen, 603 F.3d 15, 20 (2d Cir. 2010) ("[A]n administr[ator] or execut[or] may not proceed *pro se* when the estate has beneficiaries or creditors other than the litigant.") (internal quotation marks and citation omitted); Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007) ("A person who has not been admitted to practice of law may not represent anybody other than himself."); see also Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("[H]ere it is only plaintiff's own interest being litigated [not that of his father's Estate] . . . [thus] plaintiff himself may proceed *pro se* in his own claim against [defendant] in the district court."). Therefore, plaintiff may only pursue her claims against defendants in her own interest, not on behalf of her brother's estate.

1

summary judgment on all of plaintiff's claims. The Honorable Margo K. Brodie referred

defendants' motion to me for a Report and Recommendation to me in accordance with 28 U.S.C.

§ 636(b). Although the Court is empathetic to the circumstances giving rise to plaintiff's case,

defendants' motion for summary judgment should be granted and plaintiff's complaint should be

dismissed for the reasons set forth below.

## BACKGROUND

The following facts are drawn from plaintiff's complaint ("Compl."), ECF No. 1,

defendants' Rule 56.1 statement of undisputed material facts ("Defs. 56.1"), ECF No. 34-7,

plaintiff's response to defendants' Rule 56.1 statement of undisputed material facts, ("Pl. 56.1"),

ECF No. 32, and documents annexed thereto.[2]

### I.   Willie's Life Insurance Benefits Plan

From July 1, 2010 through April 28, 2017, Willie was employed by WE Transport and

worked twenty-seven and a half hours per week. Defs. 56.1 ¶ 1; UNIMERICA at 50.[3] By virtue of

his employment, Willie was a participant in an ERISA-governed employee life insurance plan (the

"Plan") established by WE Transport. Defs. 56.1 ¶ 1; UNIMERICA at 3–25. The Plan provided

---

[2] Plaintiff's response to defendants' Rule 56.1 statement disputes all but two facts. Pl. 56.1 ¶¶ 11, 20 ("The Decedent passed away on July 28, 2017" and "in addition to her, the Decedent had four other siblings."). Plaintiff's disputes include challenges to the authenticity of documents, claims that defendants misrepresented facts, defendants' "fail[ure] to follow ERISA mandates," and defendants' collusion to deprive her of a "full/fair review." Id. at ¶¶ 2–6, 8–10, 13, 15–16, 22–24, 26–31, 33–34, 44, 46–51, 53–55, 58–59. Where plaintiff cites to the record, the citations do not support plaintiff's assertions. See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (The Court "must be satisfied that the citation to evidence in the cited record supports the moving party's assertions."); Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003) (the Court must ensure that the record supports the parties' Rule 56.1 statements and if not, "the unsupported assertions must nonetheless be disregarded and the record independently reviewed.") (citation omitted); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (explaining that "district courts in the Southern and Eastern Districts of New York have interpreted the current Local Rule 56.1 to provide that where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the court is free to disregard the assertion.") (internal quotation marks and citations omitted). Therefore, the Court deems admitted only those facts that are supported by admissible evidence which are not controverted by the record.

[3] The Court refers to defendants' submissions as "UNIMERICA[,]" ECF Nos. 34-2–32-5, and plaintiff's submission as "CRC[,]" ECF No. 30. Page citations refer to the Bates Stamp number at the bottom of the respective documents.

life insurance coverage funded by a group life insurance Policy No. GL-304835 (the "Policy"). Defs. 56.1 ¶ 1; UNIMERICA at 3–25. Willie's life insurance benefits under the Plan totaled $15,000.00.[4] Defs. 56.1 ¶ 2; UNIMERICA at 8, 50.

The Policy was to be administered by Unimerica. Defs. 56.1 ¶¶ 3–5; UNIMERICA at 10–11, 22. As the claims administrator, Unimerica had "discretionary authority to determine the Covered Person's or Dependent's eligibility" to collect life insurance benefits pursuant the Policy. Defs. 56.1 ¶ 4; UNIMERICA at 11.

The Plan provided that "[t]he Covered Person's beneficiary will be the person(s) he names in writing to receive any amount of insurance payable due to his death[.]" Defs. 56.1 ¶ 7; UNIMERICA at 15. However, "[i]f there is no named beneficiary living at the Covered Person's death, [Unimerica] will pay any amount due to the estate, or at [Unimerca's] option, to his: 1. legal spouse; 2. natural or legally adopted children in equal shares; or 3. estate." Defs. 56.1 ¶ 7; UNIMERICA at 15.

## II.    Disbursement of Willie's Life Insurance Benefits Under the Plan

Willie died on July 28, 2017. Defs. 56.1 ¶ 11; UNIMERICA at 46. Around August 14, 2017, Unimerica received a letter from WE Transport attaching a proof of death claim form completed by plaintiff, Willie's death certificate, and Willie's time records for the last three months of his employment. Defs. 56.1 ¶ 12; UNIMERICA at 26–27, 48–63. In the letter to Unimerica,

---

[4] Based on documents retrieved through her Freedom of Information Law ("FOIL") request, plaintiff asserts that defendants "omitted" some of the administrative records and provided for "conflicting" certifications of coverage. Pl. 56.1 ¶¶ 2, 4–6, 9; CRC at 42–64. Specifically, plaintiff states that defendants' documents list Willie's life insurance policy as $15,000; whereas plaintiff's FOIL request lists a $25,000 policy. Pl. 56.1 ¶2; CRC 47.
  Defendants report that "the document marked as CRC 44–64 was sent in error in response to Plaintiff's [FOIL] request to the New York State Department of Financial Services." ECF No. 35-1 at 2, Declaration of Anne L. Pelkey ("Pelkey Decl."). Ms. Pelkey's declaration states that the document submitted by plaintiff referencing a $25,000 policy applies to employees who "'customarily work 30 hours or more per week' and who are in occupation class 5." Pelkey Decl. at 1–2; CRC at 44, 47, and therefore is inapplicable here as the record reflects that Willie only worked twenty-seven and a half hours per week and was in occupation class 6, UNIMERICA at 5, 8, 50; Pelkey Decl. at 2.

WE Transport stated that Willie did not have a beneficiary designation form on file. Defs. 56.1 ¶ 13; UNIMERICA at 48. Furthermore, WE Transport reported that it was contacted by plaintiff, who explained that she is Willie's sister and had submitted a proof of death claim to WE Transport stating that she was Willie's "next of kin sister." Defs. 56.1 ¶¶ 14–15; UNIMERICA at 48–49.

By letter dated August 17, 2017, Unimerica informed plaintiff that it could not process her claim for life insurance benefits because she had not completed a Claimant's Facility of Payment Affidavit ("Facility of Payment Affidavit") pursuant to the Plan. Defs. 56.1 ¶ 16; UNIMERICA at 64. Unimerica explained to plaintiff that the Facility of Payment Affidavit was required because Willie did not have a beneficiary designation on file. Defs. 56.1 ¶ 16; UNIMERICA at 64.

Around August 30, 2017, plaintiff submitted her Facility of Payment Affidavit. Defs. 56.1 ¶ 17. UNIMERICA at 29, 72–75. Plaintiff stated that Willie was survived by four adopted children: Jeanelle Owen, Takia Campbell, Bruce Campbell, and Bayquan Campbell. Defs. 56.1 ¶ 18; UNIMERICA at 73. Plaintiff provided home addresses for Jeanelle and Takia and stated that she was unaware of Bruce and Bayquan's addresses. Defs. 56.1 ¶ 19; UNIMERICA at 73. As part of the Facility of Payment Affidavit, plaintiff affirmed the following:

> The information I have provided herein is true, correct, and complete to the best of my knowledge. I understand that the completion of this form does not guarantee payment under the above policy. I understand that if payable, policy proceeds will be paid pursuant to the beneficiary/facility of payment provision in the above referenced policy based on the information that I have provided herein. I understand and agree that the payment of the proceeds (in whole or in part) under the above referenced group insurance policy will be paid pursuant to its term[s] to either myself, paid amongst the surviving relatives of the insured or will be paid to the Insured's estate.[5]

---

[5] Plaintiff also released Unimerica "from any further liability in consideration of such payment." UNIMERICA at 74. However, she "retroactively . . . withdr[ew] [her] consent to release UnitedHealthcare Insurance Company and any of its subsidiaries/affiliates and employees form any/all liabilities in consideration of payment [under the Plan]." Defs. 56.1 ¶ 34; UNIMERICA at 115–16.

Defs. 56.1 ¶ 22; UNIMERICA at 74. After receiving plaintiff's Facility of Payment Affidavit, Unimerica contacted Jeanelle and Takia. Defs. 56.1 ¶ 24; UNIMERICA at 29.

Around September 8, 2017, Jeanelle returned the proof of death claim form in which she stated that she is Willie's daughter. Defs. 56.1 ¶ 25; UNIMERICA at 29, 81. Unimerica responded to her the same day and reported that her claim for life insurance benefits had been approved in the amount of $3,750.00, plus interest to date in the amount of $4.02. Defs. 56.1 ¶ 26; UNIMERICA at 78. Unimerica sent Jeanelle the total amount, $3,754.02, by check dated September 11, 2017, which she deposited. Defs. 56.1 ¶¶ 26–27; UNIMERICA at 286.

Around September 12, 2017, Takia returned the proof of death claim form in which she stated that she is Willie's daughter. Defs. 56.1 ¶ 28; UNIMERICA at 29, 90. Unimerica responded to her the same day, and reported that her claim for life insurance benefits had been approved in the amount of $3,750.00, plus interest in the amount of $4.19. Defs. 56.1 ¶ 29; UNIMERICA at 86. Unimerica sent Takia the total amount, $3,754.19, by check dated September 13, 2017, which she deposited. Defs. 56.1 ¶¶ 29–30; UNIMERICA at 285.

Soon after Unimerica had disbursed life insurance proceeds to Jeanelle and Takia, by letter dated September 18, 2017, plaintiff requested that Unimerica distribute the life insurance benefits to Willie's Estate. Defs. 56.1 ¶ 31; UNIMERICA at 91. Plaintiff attached a letter from the Suffolk County Surrogate's Court dated September 14, 2017 stating that "the court has recently filed [plaintiff's] affidavit of Voluntary Administration" and that plaintiff "now ha[d] the authority to administer [Willie's] property that is listed in the affidavit[.]" Defs. 56.1 ¶ 32; UNIMERICA at 93. Plaintiff's letter also attached receipts of payments she had made for Willie's funeral service.[6] UNIMERICA at 94–96.

---

[6] At the initial conference, plaintiff explained that she had done the right thing: she had buried her brother. Plaintiff never expected that Willie's children would deny her reimbursement for the funeral expenses. That is what makes this

Around September 21, 2017, Unimerica received a letter from plaintiff dated September 20, 2017, again requesting Unimerica to distribute the insurance proceeds to her personally and to Willie's Estate. Defs. 56.1 ¶ 33; UNIMERICA at 115.

Around October 27, 2017, Unimerica received a fax from Takia stating that her brothers, Bruce and Bayquan, were currently incarcerated. Defs. 56.1 ¶ 35; UNIMERICA at 134. Takia attached Bruce and Bayquan's proof of death claim forms in which they stated that they are Willie's sons. Defs. 56.1 ¶¶ 36–37; UNIMERICA at 135, 140. Bruce and Bayquan also submitted a notarized General Power of Attorney form in which they appointed Takia to be their "attorney-in-fact" to "manage and conduct all of [their] affairs and to exercise all of [their] legal rights and powers[.]" Defs. 56.1 ¶¶ 36–37; UNIMERICA at 136–39, 141–44. Unimerica informed Bruce and Bayquan that their claims for life insurance benefits had been approved in the amounts of $3,750.00, plus interest in the amounts of $8.99 and $9.69, respectively. Defs. 56.1 ¶¶ 38, 40; UNIMERICA at 149, 155. Unimerica sent Bruce and Bayquan's checks to Takia—one in the amount of $3,758.99 for Bruce's proceeds and one in the amount of $3,759.69 for Bayquan's proceeds—both checks were deposited. Defs. 56.1 ¶¶ 38–41; UNIMERICA at 283–84.

### III.   Unimerica's Denial of Plaintiff's Claim for Willie's Life Insurance Benefits

By letter dated October 11, 2017, plaintiff requested that Unimerica explain "why [her] claim was denied or has not been expedited" and requested that Unimerica disclose their policies about the Facility of Payment Affidavit. Defs. 56.1 ¶¶ 42–43; UNIMERICA at 130–31. By letter dated November 16, 2017, Unimerica reported that plaintiff's claim for life insurance benefits under the Plan had been denied.[7] Defs. 56.1 ¶ 44; UNIMERICA at 152–53. Unimerica explained

---

case so sad. Plaintiff has reason to be upset, however, defendants disbursed the proceeds of Willie's life insurance benefits pursuant to the Plan by paying his adopted children.

[7] The Plan provides that "[n]otice of a decision to deny a claim (in whole or in part) shall be furnished to the claimant within 90 days following the receipt of the claim or within 90 days following the expiration of the initial 90[-]day

that the Plan provides that "[t]he Covered Person's beneficiary will be the person(s) he names in writing to receive any amount of insurance payable due to his death." UNIMERICA at 152–53. However, "[i]f there is no named beneficiary living at the Covered Person's death, [Unimerica] will pay any amount due to the estate, or at [Unimerca's] option, to his: 1. legal spouse; 2. natural or legally adopted children in equal shares; or 3. estate." Defs. 56.1 ¶ 45; UNIMERICA 15, 152–53. Unimerica further explained that after plaintiff completed the Facility of Payment Affidavit stating that Willie had four adopted children, it "began to follow [its] established claim payment practices" in accordance with the Plan provisions.[8] Defs. 56.1 ¶ 46; UNIMERICA at 153. Furthermore, Unimerica informed plaintiff of her right to administratively appeal the adverse benefit determination. Defs. 56.1 ¶ 48; UNIMERICA at 153.

## IV.    Plaintiff's Administrative Appeal and Subsequent Correspondence

By letter dated November 26, 2017, plaintiff timely appealed Unimerica's adverse benefit determination.[9] Defs. 56.1 ¶ 49; UNIMERICA at 272–75. Plaintiff claimed that "Unimerica utilized [the Facility of Payment Affidavit] to deceptively release Unimerica from liability." Defs. 56.1 ¶ 50; UNIMERICA at 274. By letter dated January 18, 2018, Unimerica informed plaintiff that it had conducted an independent review of plaintiff's appeal and nonetheless denied her appeal, upholding the initial adverse benefit determination regarding plaintiff's claim for Willie's

---

period, in a case where there are special circumstances requiring extension of time for processing the claim." UNIMERICA at 25. Plaintiff submitted her initial written request on September 18, 2017; Unimerica denied plaintiff's claims on November 16, 2017, within the 90-day time frame. Id. at 91, 152–53.

[8] Plaintiff did not submit her voluntary appointment as Estate Administrator until two weeks after she submitted her Facility of Payment Affidavit. UNIMERICA at 153.

[9] The Plan provides that if a complainant "is not satisfied with any attempts at informal resolution, the complainant must submit a written request for review of a denied claim or a written notice of the complaint or dispute to the address identified on the claim denial letter within 60 days of receipt of the claim denial notice." UNIMERICA at 25. Plaintiff's claim was denied by letter dated November 16, 2017; plaintiff filed her appeal ten days later on November 26, 2017. Id. at 152–53, 272–75.

life insurance benefits under the Plan.[10] Defs. 56.1 ¶ 52; UNIMERICA at 277–78. Unimerica again explained its reasoning: that it had discretionary authority to determine a person's eligibility for benefits. Defs. 56.1 ¶¶ 53–55; UNIMERICA at 278. Unimerica concluded that, "consistent with [Unimerica's] normal claims process," it appropriately paid the proceeds to Willie's children. Defs. 56.1 ¶ 54; UNIMERICA at 277. Furthermore, Unimerica informed plaintiff of her right to bring a civil action under ERISA 502(a). Defs. 56.1 ¶ 56; UNIMERICA at 278.

After her administrative appeal was denied, plaintiff again wrote to Unimerica by letter dated February 18, 2018, and stated that the Plan's facility of payment provision "clearly covers only the situation [in] which the named beneficiary is not alive at the time of the insured's death" and again requested Unimerica distribute the life insurance benefits to Willie's Estate. Defs. 56.1 ¶ 57; UNIMERICA at 279–80. Unimerica responded to plaintiff by letter dated April 12, 2018, stating that its determination was final and that it would "not review this matter further." Defs. 56.1 ¶ 59; UNIMERICA at 282.

## PROCEDURAL HISTORY

Plaintiff commenced this action against Unimerica and WE Transport on September 24, 2018. ECF No. 1. Unimerica answered plaintiff's complaint on November 15, 2018. ECF No. 15. As WE Transport was purportedly served, but had not timely responded, plaintiff requested that the Clerk of Court enter a default against WE Transport. ECF No. 21. The Court denied plaintiff's request for an entry of default against WE Transport as it was unclear whether proper service was made. ECF No. 23. Nonetheless, WE Transport answered plaintiff's complaint on February 11,

---

[10] Defendants note that there is a typographical error in the letter. The letter is dated January 18, 2017, but should be dated January 18, **2018**. UNIMERICA at 277; ECF No. 34-6 at 15.

The Plan provides that "[a] written notice of the final decision will usually be sent to the complainant within 60 days of receipt of the written request for review of a denied claim or notice of a complaint or dispute." UNIMERICA at 25. Plaintiff appealed the adverse benefit determination on November 26, 2017; Unimerica timely denied her appeal on January 18, 2018. Id. at 272–75, 277–78.

2019. ECF No. 26. The Court held two conferences in this case, on December 18, 2018 and January 15, 2019. ECF Nos. 19, 22. After the parties completed discovery, the Court set the parties' briefing schedule on February 19, 2019.

Defendants now move for summary judgment on all of plaintiff's claims. ECF No. 34; ECF No. 34-6, Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Memo"); ECF No. 34-7 Defendants' Local Rule 56.1(a) Statement of Undisputed Material Facts ("Defs. 56.1"); ECF No. 34-8, Defendants' Local Rule 56.2 Notice to *Pro Se* Litigant Who Opposes a Motion for Summary Judgment. Defendants' motion includes a declaration from Judianne M. Demers, Associate General Counsel for UnitedHealth Group, ECF No. 34-1, which attaches the following documents: a copy of the Group Life Certificate Coverage for WE Transport issued by Unimerica, ECF No. 34-2; and, a copy of plaintiff's claim and appeal file for the claim, ECF Nos. 34-3–34-5. Plaintiff opposes the motion. ECF No. 31, Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Rule 56.1 ("Pl. 56.1"); ECF No. 32, Plaintiff's Memorandum of Law in Opposition of Motion for Summary Judgment ("Opp."). Defendants replied. ECF No. 35, Defendants' Reply Memorandum of Law in Further Support of Motion for Summary Judgment ("Reply"); ECF No. 35-1, Reply Declaration of Anne L. Pelkey.

## LEGAL STANDARD

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248). A *pro se* party's submissions "must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted).

The burden is on the moving party to establish that there is no genuine issue of material fact in dispute. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the non[-]movant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) (citing Fed. R. Civ. P. 56(e) and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)); see also Anderson, 477 U.S. at 257 (the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). "The 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

In deciding a motion for summary judgment under ERISA for denial of benefits, the Court reviews the administrative record created by the insurance company during the evaluation and resolution of an insured's claims for benefits. Halo v. Yale Health Plan, 819 F.3d 42, 60 (2d Cir. 2016) ("[W]hen reviewing claim denials, whether under the arbitrary and capricious or *de novo* standards of review, district courts typically limit their review to the administrative record before the plan at the time it denied the claim.").

## DISCUSSION

### I.    Standard of Review of Unimerica's Actions

Plaintiff's challenge to defendants' denial of her claim for Willie's life insurance benefits can be decided on summary judgment. A motion for summary judgment "provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record." Topalian v. Hartford Life Ins. Co., 945 F. Supp. 2d 294, 331 (E.D.N.Y. 2013) (citations omitted). Although "ERISA does not set out the appropriate standard of review for actions under [ERISA] § 1132(a)(1)(B) challenging benefit eligibility determinations[,]" Halberg v. United Behavioral Health, 408 F. Supp. 3d 118, 159 (E.D.N.Y. 2019), the Supreme Court has held that courts must apply a "'*de novo* standard [of review]' unless the plan provides to the contrary." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008) (quoting Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).

Benefit plans may provide for a different standard of review by granting the "administrator or fiduciary *discretionary authority* to determine eligibility for benefits[.]" Id. (quoting Firestone, 489 U.S. at 115) (emphasis in original). Where the benefit plan grants a claim administrator or fiduciary discretionary authority, a "*deferential* standard of review remains appropriate[.]" Conkright v. Frommert, 559 U.S. 506, 512 (2010) (citations omitted). Put differently, in cases where a deferential standard of review is appropriate, a court "will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 106–07 (2d Cir. 2005) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441–42 (2d Cir. 1995)).

Here, the Plan governing Willie's life insurance benefits grants Unimerica, "*discretionary authority* to determine the Covered Person's or Dependent's eligibility, if applicable, for benefits

11

and to interpret the terms and provisions of the Policy." Defs. 56.1 ¶¶ 4–5; UNIMERICA at 10–11 (emphasis added). As the Plan expressly grants Unimerica "discretionary authority" to construe the terms of the Plan to determine eligibility for benefits, the Court should apply the arbitrary and capricious standard of review to plaintiff's challenge regarding the denial of benefits.[11] See Sullivan-Mestecky v. Verizon Commc'ns Inc., No. 14 CV 1835 (SJF)(AYS), 2018 WL 2422678, at *12–13 (E.D.N.Y. Mar. 5, 2018), adopted by, 2018 WL 2229140 (E.D.N.Y. May 16, 2018) (finding that the arbitrary and capricious standard of review was proper where the Plan "expressly grant[ed] discretionary authority to the [employer's review committee and the Claims Administrator, Prudential Insurance Company] to construe plan terms and make determinations concerning benefit eligibility.").[12]

Plaintiff claims that the Plan does not grant Unimerica discretionary authority because the Group Life Certificate "does not give the claims administrator **[FULL]** discretionary authority[,]" Pl. 56.1 ¶ 3 (emphasis in original), and "[t]his discretion is not contained in the Summary Plan Description[,]" Opp. at 10. As discussed above, the Plan expressly grants discretionary authority to Unimerica. UNIMERICA at 10–11. It is not required that discretionary authority be granted within the "Summary Plan Description" document. Moreover, there is no merit to plaintiff's argument that the Plan did not grant Unimerica discretionary authority because the Plan merely granted "discretionary authority," as opposed to "**[FULL]** discretionary authority." Pl. 56.1 ¶ 3;

---

[11] Plaintiff argues that the Plan is ambiguous and the rule of contra proferentum applies, Opp. at 21; however, this is incorrect as a matter of law. First, plaintiff does not identify any ambiguous provision in the Plan. Furthermore, even if plaintiff had identified an ambiguous provision in the Plan, defendants would still prevail. The rule of contra proferentum is limited to when a court "performs de novo review" of an ERISA plan. Houston v. Teamsters Local 210, Affiliated Health and Ins. Fund-Vacation Fringe Ben. Fund, 27 F. Supp. 3d 346, 355 (E.D.N.Y. 2014) (citing Pagan, 52 F.3d at 443–44). When using "the highly deferential arbitrary and capricious standard of review . . . the rule of contra proferentum does not apply." Id. at 355–56 (finding that the rule of contra proferentum did not apply because the governing plan provided for discretion; thus, the Court reviewed the adverse benefit determination using the arbitrary and capricious standard of review).

[12] The Clerk of Court is directed to send plaintiff the attached copies of all the unreported cases cited herein.

Conkright, 559 U.S. 506 at 512–13 (discussing Supreme Court precedents regarding grants of "*discretionary authority* to determine eligibility for benefits or to construe the terms of the plan") (citation omitted) (emphasis added); Nichols v. Prudential Ins. Co. of America, 406 F.3d 98, 108 (2d Cir. 2005) ("A reservation of discretion need not actually use the words 'discretion' or 'deference' to be effective, but it must be clear.") (citation omitted).

## II.    Application of Arbitrary and Capricious Review

The scope of judicial review when applying the arbitrary and capricious standard is narrow.[13] Celardo v. GNY Auto. Dealers Health & Welfare Tr., 318 F.3d 142, 146 (2d Cir. 2003) (citing Peterson v. Cont'l Cas. Co., 282 F.3d 112, 117 (2d Cir. 2002) and Pagan, 52 F.3d at 442); see also Miller v. United Welfare Fund, 72 F.3d 1066, 1070 (2d Cir. 1995) ("When an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, a district court must review deferentially a denial of benefits challenged under § 502(a)(1)(B)."). In the context of a summary judgment motion, the "arbitrary and capricious standard requires that [the court] ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." Davis v. Commercial Bank of N.Y., 275 F. Supp. 2d 418, 425 (S.D.N.Y. 2003) (internal quotation marks and citation omitted). "Under this deferential standard, '[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control.'" Halberg, 408 F. Supp. 3d at 142 (citing McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 132 (2d Cir. 2008)). "[W]here the administrator imposes a standard not required by the plan's

---

[13] In reviewing whether defendants' decision was arbitrary and capricious, "[t]he presumption is that judicial review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." Halberg, 408 F. Supp. 3d at 156 (citing Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003)) (internal quotations omitted).

provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." Halberg, 408 F. Supp. 3d at 142. A court "cannot substitute its judgment for that of the Plan Administrator and will not overturn a decision to deny or terminate benefits unless 'it was without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Fuller, 423 F.3d at 107 (quoting Pagan, 52 F.3d at 442).

Defendants' denial of plaintiff's claim for Willie's life insurance benefits was not arbitrary or capricious. Willie died on July 28, 2017 without a designated beneficiary. UNIMERICA at 46, 48. The Plan provided that if "there is no named beneficiary at the Covered Person's death, [Unimerica] will pay any amount due to the estate or, at [Unimerica's] option, to his: (1) legal spouse; (2) natural or legally adopted children in equal shares; or (3) estate[.]" Id. at 15. Plaintiff's Facility of Payment Affidavit stated that Willie was survived by four adopted children and no spouse. Id. at 73. Plaintiff's affidavit acknowledged that any amount payable would be disbursed pursuant to the Plan. Id. at 74. Unimerica exercised its option to disburse the benefits to Willie's four adopted children in accordance with the Plan. Id. at 15, 26–42, 85, 90, 134–44, 149, 283–86. Nothing in the Plan required Unimerica to pay the Plan proceeds in any particular order. The record reflects that Unimerica escalated plaintiff's concerns to its legal department, which, upon review of the "facts in this claim and the corresponding policy," ultimately concluded that the proceeds were paid to the Willie's adopted children "in a manner that follows the policy provisions." Id. at 145.

Contrary to plaintiff's claims, Opp. at 14–15, both during the initial denial and on administrative appeal, Unimerica explained how it exercised its discretion to disburse the proceeds to Willie's adopted children, UNIMERICA at 152–53, 277–78. By letter dated November 16, 2017, Unimerica denied plaintiff's initial claim and plainly explained that it could disburse the

14

funds pursuant to its "established claim payment practices[,]" which was to disburse the funds to any spouse, natural or legally adopted children, or the estate at its discretion. Id. at 15, 152–53. Unimerica also discussed that at time of the first two disbursements, plaintiff had not yet been named the Administrator of Willie's Estate. Id. at 152–53. Furthermore, Unimerica explained that plaintiff had a right to an administrative appeal. Id. On appeal, Unimerica upheld the initial claim determination by letter dated January 18, 2018. Id. at 277–78. Unimerica reported that upon its independent review of her claim, it found that the "benefits have been paid appropriately and are not payable to the estate." Id. In the same letter, Unimerica also informed plaintiff that she could review the determination by bringing a civil action under ERISA Section 502(a). Id. at 278.

Plaintiff advances numerous arguments to demonstrate that Unimerica's denial of her claim was arbitrary and capricious; however, plaintiff's arguments are not persuasive.

First, plaintiff claims that she "was led to believe" that completing the Facility of Payment Affidavit would expedite her claim for life insurance benefits. Opp. at 7. However, the record demonstrates that by letter dated August 17, 2017, Unimerica requested that plaintiff submit the Facility of Payment Affidavit because Willie did not have a beneficiary designation on file. The letter does not promise plaintiff receipt of Willie's life insurance proceeds whether on a normal or expedited basis. UNIMERICA at 64. Quite to the contrary, based on the Facility of Payment Affidavit that plaintiff completed and signed, plaintiff expressly affirmed "that *if* payable, policy proceeds will be paid *pursuant to the beneficiary/facility of payment provision in the above referenced policy* based on the information that [she had] provided herein." Id. at 74–75 (emphasis added).

Next, plaintiff argues that defendants failed to verify the adopted status of Jeanelle, Takia, Bruce, and Bayquan. Opp. 6, 9, 15. However, Unimerica did obtain proof of Jeanelle, Takia, Bruce,

15

and Bayquan's adopted status by plaintiff's own verification that they were Willie's adopted children, UNIMERICA at 73, and by each of the children themselves certifying that they are Willie's son or daughter in their respective proof of death claim forms, id. at 81, 90, 135, 140. Unimerica was not required to take additional steps to verify Jeanelle, Takia, Bruce, and Bayquan's adopted status.

Plaintiff also argues that Unimerica created competing claims by disbursing the life insurance proceeds to Jeanelle, Takia, Bruce, and Bayquan, and that it failed to file an interpleader with the Court. Opp. at 7, 9–10, 12–16, 23. "An interpleader action *may* be brought pursuant to the Federal Interpleader Act, 28 U.S.C. § 1335 ["statutory interpleader"], and Rule 22 of the Federal Rules of Civil Procedure ["rule interpleader"]. <u>Metro. Life Ins. Co. v. Carey</u>, No. 16-CV-3814 (DLI)(SJB), 2017 WL 4351512, at *2 (E.D.N.Y. Sept. 29, 2017) (citation omitted) (emphasis added). Put differently, in cases where there are competing claims to a benefit, a claims administrator *may* initiate an interpleader action. Unimerica was not required to commence an interpleader action and perhaps did not have "real or reasonable fear of double liability or vexatious, conflicting claims" as neither plaintiff nor Willie's Estate were named beneficiaries and Unimerica had exercised its discretion to pay the benefits pursuant to the Plan provisions. <u>Bank of N.Y. v. First Millennium, Inc.</u>, 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted); UNIMERICA at 15, 28–42, 72–75, 85, 90, 134–44, 149, 283–86

Last, plaintiff alludes to two different conflicts of interest. First, in a passing reference, she claims that there is a conflict of interest due to the "dual representation by the law firm of ROBINSON & COLE LLP." Opp. at 9. The Court finds no basis for this conclusory, unsupported claim. Plaintiff then attempts to infer a conflict of interest based on Unimerica both evaluating potential claims and paying those claims. Specifically, she alleges that defendants "willfully [made

Willie's beneficiary] elections disappear," "created" Unimerica's April 12, 2018 letter "to be part of the administrative record[,]" spoke with Willie's niece "who is friendly and familiar with personnel in [WE Transport] Human Resources[,]" and executed a "claims process that was tainted" in an attempt to "wrest the proceeds from [Willie's] Estate." Pl. 56.1 ¶¶ 16, 58; Opp. at 13, 20.

The Court must consider whether the alleged conflict likely "affected the benefits decision." [14] Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 139–40 (2d Cir. 2010) (quoting Glenn, 554 U.S. at 117). The alleged conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision[.]" Id. (quoting Glenn, 554 U.S. at 117). Conversely, "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." Id. at 140 (citing Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 83 (2d Cir. 2009)). Plaintiff fails to demonstrate that Unimerica's denial of her claim was motivated by a conflict of interest. Unimerica's denial of plaintiff's claim was based on its payment to Willie's four adopted children pursuant to the Plan. See Roganti v. Metro. Life Ins. Co., 786 F.3d 201, 218–19 (2d Cir. 2015) (discussing that although "it is undisputed that [defendant] MetLife has a 'categorical' conflict of interest because it both evaluates and pays claims[,]" plaintiff had not identified any evidence that demonstrated the conflict "affected the administrator's decision.").

### III.   Plaintiff's Claims Under Other Sections of ERISA

Plaintiff also seeks relief under ERISA Sections 502(a)(2), 502(a)(3), 502(c), 502(l), 503, and 511. Compl. at 3. Defendants argue that plaintiff has "failed to articulate any grounds for such

---

[14] A claim of a conflict of interest does not change the standard of review in a denial of benefits case from arbitrary and capricious to de novo; instead, courts must "weigh the conflict 'as a factor in determining whether there is an abuse of discretion.'" Roganti v. Metro. Life Ins. Co., 786 F.3d 201, 218 (2d Cir. 2015) (quoting Glenn, 554 U.S. at 115).

relief[,]" and in any event, plaintiff is not entitled to recovery under any of those sections of the statute. Memo at 20–25; Reply at 11–13. In her opposition, plaintiff concedes that she is not entitled to any relief under ERISA Sections 502(a)(2), 502(1), and 511.[15] Opp. at 18. Accordingly, the Court confines its analysis to the remaining sections of the statute and finds that plaintiff is not entitled to relief pursuant to those sections.

### a. ERISA Section 502(a)(3): Breach of Fiduciary Duty

Plaintiff brings a claim for breach of fiduciary duty pursuant to Section 502(a)(3). Compl. at 3. Where "[t]he relief that the plaintiffs seek . . . falls comfortably within the scope of § 502(a)(1)(B) . . . there is no need on the facts of this case to also allow equitable relief under § 502(a)(3)." Frommert v. Conkright, 433 F.3d 254, 269–70 (2d Cir. 2006) (affirming a district court's decision to dismiss plaintiffs' claim under § 502(a)(3) to seek monetary damages in the form of recalculation of their pension benefits), rev'd on other grounds, 559 U.S. 506 (2010). Here, plaintiff seeks monetary damages, the same damages sought under her Section 502(a)(1)(B) claim; thus her Section 502(a)(3) claim fails. See Amron v. Yardain Inc. Pension Plan, No. 18 Civ. 11336(LGS), 2019 WL 6619107, at *9 (S.D.N.Y. Dec. 5, 2019) ("Here, Plaintiff seeks solely monetary damages identical to those sought in the claim under ERISA § 502(a)(1)(B), and therefore a claim brought under § 502(a)(3) would fail."); Wagner v. Metro. Life Ins. Co., No. 08 Civ. 11284 (GBD)(HBP), 2011 WL 2638143, at *18 (E.D.N.Y. Feb. 28, 2011), adopted by, 2011 WL 2623390 (E.D.N.Y. July 1, 2011) (denying plaintiff's Section 502(a)(3) claim on summary judgment where the claim did "not seek appropriate equitable relief," but rather sought "the

---

[15] Plaintiff also cites to ERISA § 502(d)(2), Opp. at 18, which is not raised in her Complaint. Section 502(d) provides that "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2). For the reasons discussed herein, plaintiff's claim under Section 502(d) fails as she is not entitled to any relief against defendants under the cited sections of the ERISA. Yoon v. Fordham Univ. Faculty, 173 Fed. App'x 936, 940–41 (2d Cir. 2006) (summary order).

recovery of Plan benefits and/or damages, i.e., money. Plaintiff's Section 502(a)(3) claims are indistinguishable from her Section 502(a)(1)(B) claims to recover Plan benefits[.]").

### b. ERISA Section 502(c)(1): Statutory Disclosure Penalties

Plaintiff seeks to recover statutory damages for Unimerica's alleged nondisclosure of certain information. Compl. at 3. Section 104(b)(4) requires that a plan administrator "shall, upon written request . . . furnish a copy of the latest updated summary, [sic] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section 502(c)(1)(B) provides that when a plan administrator "fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request[,]" a court, in its discretion, may hold the plan administrator "personally liable . . . in the amount of up to $100 a day from the date of such failure or refusal[.]" 29 U.S.C. § 1132(c)(1)(B).

The record reflects that plaintiff made several requests by telephone to Unimerica representatives for claims documents. UNIMERICA at 28–42, 91, 131; Opp. 6, 9–10, 12. However, plaintiff's telephone requests to Unimerica were not proper requests under the ERISA. See Sullivan-Mestecky, 2018 WL 2422678, at *17 ("[A]lthough Plaintiff laments [defendant] Verizon's failure to provide documents . . . the requests prior to the July 2014 letters were all made orally and therefore do not constitute a proper request for ERISA purposes. Consequently . . . the Court will only review requests made in compliance with ERISA § 104(b)(4) which requires requests to be written."); D'Iorio v. Winebow, Inc., 920 F. Supp. 2d 313, 318 (E.D.N.Y. 2013) ("Plaintiff only claims to have made oral requests via her phone conversations with the human

resource representatives employed by the Defendant. Accordingly, as Plaintiff's allegations do not state a claim under § 502(c)(1), this claim must be dismissed.").

Furthermore, plaintiff's requests were made to Unimerica. UNIMERICA at 33–34, 91, 131, 280. However, Unimerica is not the plan administrator, UNIMERICA at 22 (listing the Director of Human Resources of WE Transport as the Plan Administrator), and therefore cannot be held liable under Section 502(c)(1)(B). See Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 631 (2d Cir. 2008) (affirming dismissal of *pro se* plaintiff's claim for statutory damages where the requests for plan documents were not made to the plan administrator); Curran v. Aetna Life Ins. Co., No. 13-cv-00289 (NSR), 2013 WL 6049121, at *3 (S.D.N.Y. Nov. 15, 2013) (holding that "[s]tatutory penalties may not be imposed upon nonadministrators[.]").

Even if plaintiff made her requests to the Plan Administrator, the Director of Human Resources for WE Transport, she was not entitled to the documents she sought. The records plaintiff requested would "fall into the catch-all in Section 104(b)(4) for other instruments under which the plan is established or operated." Gates v. United Health Grp. Inc., No. 11 Civ. 3487 (KBF), 2012 WL 2953050, at *12 (S.D.N.Y. July 16, 2012) (internal quotation marks and citation). "The Second Circuit . . . however, has interpreted that catch-all to include only 'the formal legal documents that govern or confine a plan's operations,' not 'the routine documents with which or by means of which a plan conducts its operations.'" Id. (citing Bd. of Trs. Of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 136, 142 (2d Cir. 1997)). Accordingly, plaintiff was not entitled to information about the beneficiaries or other claim documents. See Curran, 2013 WL 6049121, at *4 (discussing that plaintiff's claim under Section 502(c) failed in part because plaintiff "never specifically requested a copy of the [Summary Plan Document] because Plaintiff was in possession of [it] at all times.").

### c.  ERISA Section 503(2): Full and Fair Review

Plaintiff claims that Unimerica mishandled her claim through nondisclosure, misleading statements, and in sum, denied her a full and fair review. Compl. at 3; Opp. at 19–20. Section 503(2) states that "every employee benefit plan shall . . . afford a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). "A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review." Krauss, 517 F.3d at 630 (citations omitted).

Here, the record reflects that Unimerica evaluated the information plaintiff provided, followed its procedure to disburse the life insurance proceeds as set forth in the Plan, timely denied plaintiff's claim, timely denied plaintiff's appeal after an independent review, and notified plaintiff of its reasoning. UNIMERICA at 28–42, 152–53, 277–78, 282. Therefore, plaintiff is not entitled to relief under Section 503(2). See Krauss, 517 F.3d at 630 ("[Defendant] Oxford's benefits determination, even if not properly explained at the time of the denial and during administrative review, was, as a substantive matter, an appropriate implementation . . . under the Plan. We therefore conclude that [plaintiffs] are not entitled to relief" under Section 503(2)).

## CONCLUSION

Accordingly, defendants' motion for summary judgment should be granted and plaintiff's complaint should be dismissed. As summary judgment should be granted, the Court need not address whether WE Transport is a proper defendant in this action.[16]

---

[16] The Clerk of Court is directed to mail plaintiff a copy of this Report and Recommendation, as well as the attached unreported cases cited herein, via overnight mail.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated: March 2, 2020
      Brooklyn, New York