UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

COLLETTE CAMPBELL, Administrator
Representative of the Estate of Willie Campbell,
Deceased,

                        Plaintiff,

         v.

WE TRANSPORT, INC., a New York corporation,
and UNIMERICA LIFE INSURANCE COMPANY
OF NEW YORK, a New York corporation,

                        Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-5354 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Collette Campbell, proceeding *pro se*, commenced the above-captioned action

on September 24, 2018, against Defendants WE Transport, Inc. ("WE Transport") and

Unimerica Life Insurance Company of New York ("Unimerica"), asserting claims under the

Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*

("ERISA").[1]  (Compl., Docket Entry No. 1.)  Plaintiff alleges, *inter alia*, that Defendants

improperly denied Plaintiff's claim for proceeds from a life insurance policy held by her

deceased brother and failed to disclose certain information and records to which she was entitled.

(*Id.* at 5.)  Defendants moved for summary judgment.  (Defs. Mot. for Summ. J. ("Defs. Mot."),

Docket Entry No. 34; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 34-

---

[1] The Complaint cites to the following sections of ERISA: 502(a)(1)(B)(2), 502(a)(1), 502(a)(2), 502(a)(3), 502(c), 502(l), 503(1), (2), and 511.  (*See* Compl. 3, Docket Entry No. 1.) Plaintiff now concedes that sections 502(a)(2), 502(l), and 511 "are not at issue in this action." (Pl. Mem. in Opp'n to Defs. Mot. for Summ. J. ("Pl. Opp'n") 14, Docket Entry No. 31.) Accordingly, the Court does not address those claims.

6.)  Plaintiff opposed the motion.  (Pl. Mem. in Opp'n to Defs. Mot. ("Pl. Opp'n"), Docket Entry

No. 31.)  On August 30, 2019, the Court referred the motion to Magistrate Judge Lois Bloom for

a report and recommendation.  (Order dated Aug. 30, 2019.)  By report and recommendation

dated March 2, 2020, Judge Bloom recommended that the Court grant Defendants' motion for

summary judgment (the "R&R").  (R&R, Docket Entry No. 37.)  Plaintiff timely objected to the

R&R.[2]  (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 40.)

For the reasons set forth below, the Court adopts the R&R and grants Defendants' motion

for summary judgment.

## I.  Background

The following facts are taken primarily from the administrative record.[3]

Plaintiff is the sister of Willie Campbell, now deceased, who was an employee of WE

Transport.  (Pl. Req. & Proof of Death for Group Life Insurance ("Pl. Proof of Death Claim

Form") UNIMERICA 49–50, annexed to Decl. of Judianne M. Demers in Supp. of Defs. Mot.

---

[2]  On March 4, 2020, Plaintiff requested an extension of time to object to the R&R.  (Pl. Mot. for Extension of Time, Docket Entry No. 39.)  By Order dated March 6, 2020, the Court granted Plaintiff's request for an extension.  (Order dated Mar. 6, 2020.)

[3]  At the initial conference held on December 18, 2018, Judge Bloom directed Unimerica to produce the administrative record to Plaintiff by December 27, 2018, (Scheduling Order dated Dec. 18, 2018, Docket Entry No. 20), and Defendants have attached the administrative record to their summary judgment motion, (Group Life Certificate of Coverage for WE Transport (the "Plan Document"), annexed to Decl. of Judianne M. Demers in Supp. of Defs. Mot. ("Demers Decl.") as Ex. A, Docket Entry No. 34-2; Claim & Appeal File, annexed to Demers Decl. as Ex. B, Docket Entry Nos. 32-2–32-4).  "When reviewing claim denials, whether under the arbitrary and capricious or *de novo* standards of review, district courts typically limit their review to the administrative record before the plan at the time it denied the claim."  *Halo v. Yale Health Plan*, 819 F.3d 42, 60 (2d Cir. 2016).  "The doctrine limiting review of ERISA claims to evidence before the plan administrator was developed to prevent federal courts from becoming 'substitute plan administrators' and thus to serve ERISA's purpose of providing 'a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'"  *Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 318 (2d Cir. 2008) (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966–67 (6th Cir. 1990)).

("Demers Decl.") as Ex. B, Docket Entry No. 34-3.)[4]  Willie[5] was enrolled in an employee

welfare benefit plan (the "Plan"), which included life insurance coverage funded by group life

insurance policy no. GL-304835 (the "Policy") issued by Unimerica.  (Demers Decl. ¶ 1,

annexed to Defs. Mot., Docket Entry No. 34-1; Group Life Certificate of Coverage for WE

Transport (the "Plan Document"), annexed to Demers Decl. as Ex. A, Docket Entry No. 34-2.)

### a.  Initiation of claim for life insurance benefits

Willie died on July 28, 2017.  (Death Certificate UNIMERICA 46, annexed to Demers

Decl. as Ex. B, Docket Entry No. 34-3.)  By letter dated August 10, 2017, WE Transport

contacted Unimerica, enclosing Plaintiff's Proof of Death Claim Form for life insurance benefits,

an original death certificate, and time records for the last three months of Willie's employment

(the "August 10, 2017 Letter").  (Aug. 10, 2017 Letter UNIMERICA 48, annexed to Demers

Decl. as Ex. B, Docket Entry No. 34-3; Pl. Proof of Death Claim Form; Pay Statements

UNIMERICA 51–62, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.)  The letter

stated that WE Transport did "not have a beneficiary form on file for [Willie]" and had been

"contacted by his sister [Plaintiff], who is stating she is next of kin."[6]  (Aug. 10, 2017 Letter.)

As of the time of the August 10, 2017 Letter, no one other than Plaintiff had contacted WE

Transport regarding the claim.  (*Id.*)  In the section of Plaintiff's Proof of Death Claim Form

---

[4]  Where applicable, the Court refers to documents in the record using their Bates-stamped page numbers.

[5]  Because various individuals involved in the events giving rise to this action have the last name "Campbell," the Court refers to them by their first names.

[6]  Plaintiff disputes that she contacted WE Transport, and asserts instead that she was contacted through another family member and told to contact WE Transport.  (Pl. Obj. 8; *see also* Compl. 5 (alleging that "[i]n August [of] 2017," WE Transport "communicated with the niece of the insured[] and of the [P]laintiff," who "informed the [P]laintiff to contact the employer [about] a $15,000 group life insurance policy").)  Plaintiff further asserts that "WE Transport initiated the claims process."  (Pl. Obj. 9.)

titled "Employer's Statement," WE Transport indicated that Willie's "Occupation or Class of Insured" was "6 – Long Island," that his "Scheduled Hours Worked" amounted to "27.50," and that his "Amount of Basic Life Insurance" was $15,000.[7]  (Pl. Proof of Death Claim Form UNIMERICA 50.)

By letter dated August 14, 2017, Unimerica contacted Plaintiff regarding the life insurance claim submitted on Willie's behalf (the "Claim").  (Letter dated Aug. 14, 2017 UNIMERICA 43, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.)  The letter stated that Unimerica would attempt to review the Claim within ten business days of receipt, and would "contact [Plaintiff] if any additional information is required."  (*Id.*)

### b. The facility of payment affidavit

Several days letter, on August 17, 2017, Unimerica again wrote to Plaintiff, informing her that it was unable to process the Claim without a "Claimant's Facility of Payment Affidavit," which it explained was necessary because there was no "beneficiary designation on file" (the "August 17, 2017 Letter").  (Aug. 17, 2017 Letter UNIMERICA 64, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.)  As instructed, Plaintiff returned to Unimerica a notarized Claimant's Facility of Payment Affidavit, dated August 24, 2017 (the "Facility of Payment

---

[7]  Plaintiff argues that Unimerica has produced conflicting plan documents, one of which is for a $25,000 policy.  (Pl. Opp'n 9.)  Plaintiff has attached this plan document to her opposition to Defendants' motion for summary judgment, (Alternative Plan Document CRC 44–64, annexed to Decl. of Pl. in Supp. of Pl. Opp'n ("Pl. Decl."), Docket Entry No. 30), and states that she obtained it through a Freedom of Information Law ("FOIL") request, (Pl. Decl. ¶ 1, Docket Entry No. 30).  Defendants assert that this plan document was apparently "sent in error in response to Plaintiff's [FOIL] request, and does not "govern[] Plaintiff's claim in this action," as it "applies to employees who 'customarily work [thirty] hours or more per week' and who are in occupation class 5."  (Decl. of Anne L. Pelkey in Further Supp. of Defs. Mot. ("Pelkey Decl.") ¶¶ 6–7 (quoting Alternative Plan Document CRC 44, 47).)  Plaintiff asserts that she initially received the plan document for the $25,000 policy from Unimerica in November of 2017, and only later obtained it through a FOIL request after Defendants "omitted" it from the administrative record.  (Pl. Obj. 6.)

Affidavit"). (Facility of Payment Aff. UNIMERICA 72–75, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3; Certified Mail Envelope UNIMERICA 76–77, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.)

In the Facility of Payment Affidavit, Plaintiff identified herself as Willie's sister and indicated that Willie was survived by adopted children.[8] (Facility of Payment Aff. UNIMERICA 72–73.) Plaintiff provided names of four children, all of whom she indicated were adopted: Jeanelle Owen,[9] Takia Campbell, Bruce Campbell, and Bayquan[10] Campbell. (*Id.* at UNIMERICA 73.) Plaintiff listed addresses for Jeanelle and Takia, but indicated she did not have addresses for Bruce or Bayquan. (*Id.*) Plaintiff also listed names, dates of birth, and addresses for five of Willie's siblings, including herself. (*Id.* at UNIMERICA 74.) Plaintiff did not indicate that Willie was survived by a spouse or had ever been married. (*Id.* at UNIMERICA 72–73.) In response to the question "Has an estate been opened or will there be an estate to be opened?" Plaintiff checked "Yes." (*Id.* at UNIMERICA 74.) In signing the Facility of Payment Affidavit, Plaintiff affirmed the following typed text:

> The information I have provided herein is true, correct, and complete to the best of my knowledge. I understand that the completion of this form does not guarantee payment under the above policy. I understand that if payable, policy proceeds will be paid pursuant to the beneficiary/facility of payment provision in the above referenced policy based on

---

[8] The Facility of Payment Affidavit form asks: "Was the insured survived by any natural children/legally adopted children? Yes __ No __." (Facility of Payment Aff. UNIMERICA 73.) Plaintiff circled the phrase "adopted children" and placed a checkmark next to "Yes." (*Id.*)

[9] Elsewhere in the record, Jeanelle is referred to as Jeanelle Campbell, and the Court refers to her by first name as well.

[10] Plaintiff appears to have spelled Willie's fourth adopted child's name "Beyguan." (Facility of Payment Aff. UNIMERICA 73.) Because this individual is referred to as "Bayquan" elsewhere in the record, the Court refers to him as "Bayquan" throughout this Memorandum and Order to avoid confusion.

> the information that I have provided herein. I understand and agree that the payment of the proceeds (in whole or in part) under the above referenced group insurance policy will be paid in [sic] pursuant to its term [sic] to either myself, paid amongst the surviving relatives of the insured or will be paid to the insured's estate. I further release UnitedHealthcare Insurance Company and any of its subsidiaries/affiliates and employees from any further liability in consideration of such payment.[11]

(*Id.*)

### c. Benefits awarded to Takia and Jeanelle

By letters dated August 30, 2017 (the "August 30, 2017 Letters"), Unimerica contacted both Takia and Jeanelle to inform them that it was unable to process the claim submitted on Willie's behalf because it needed a "Request for Group Life Insurance Benefits form."[12] (Aug. 30, 2017 Letters, UNIMERICA 70–71, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.) Jeanelle subsequently submitted a Request and Proof of Death for Group Life Insurance claim form, dated September 8, 2017, stating that she was Willie's daughter. (Req. & Proof of Death for Group Life Insurance by Jeanelle Campbell UNIMERICA 83, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.) Several days later, on September 12, 2017, Takia Campbell submitted a Request and Proof of Death for Group Life Insurance claim form stating that she was Willie's daughter. (Req. & Proof of Death for Group Life Insurance by Takia Campbell UNIMERICA 90, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.)

---

[11] Unimerica is a wholly owned subsidiary of UnitedHealthcare Insurance Company. (*See* Demers Decl. ¶ 2.)

[12] A "Claimant Data Search Request" indicates that a search request for Bruce's and Bayquan's addresses was initiated on August 30, 2017, the same day Unimerica wrote to Takia and Jeanelle to inform them it could not process the claim without the required paperwork. (Claimant Data Search Req. UNIMERICA 69, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.)

By letters dated September 8, 2017 and September 12, 2017, Unimerica wrote to Jeanelle and Takia, respectively, informing each of them that it had "approved benefits for the Group Life Insurance claim[s] [they had] submitted" on Willie's "behalf," and that they each would be receiving a check for the "proceeds payable to [them] under the policy." (Letter to Jeanelle Campbell dated Sept. 8, 2017 UNIMERICA 78, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3; Letter to Takia Campbell dated Sept. 12, 2017 UNIMERICA 86, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.) Jeanelle would receive a check for $3754.02; Takia would receive a check for $3754.19. (*Id.*; *see also* Deposited Check Payable to Jeanelle Campbell UNIMERICA 286, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-5; Deposited Check Payable to Takia Campbell UNIMERICA 285, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-5.)

### d. Plaintiff's demands that proceeds of the Claim be paid to the estate

More than a week after Unimerica had contacted Jeanelle to inform her it would be distributing the proceeds payable to her under the Policy, Plaintiff wrote to Unimerica to "challenge the determination of distribution of the proceeds to undisclosed [beneficiaries] determined by [Unimerica] when no beneficiary was named." (Letter dated Sept. 18, 2017 UNIMERICA 91, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.) Referencing a conversation that day with two different Unimerica representatives, Plaintiff stated that "[a]lthough [they had] not disclosed to [her] who the company determined the [beneficiaries would] be, Willie . . . did have a will and . . . outstanding debts (funeral and medical bills) that need[] to be taken care of from [the] above[-]mentioned policy." (*Id.*) Plaintiff "request[ed] further review and that a determination be made to distribute the proceeds of the . . . policy" to Willie's estate. (*Id.*) Plaintiff enclosed a letter dated September 14, 2017 from the Suffolk

County Surrogate's Court (the "Surrogate's Court Letter") addressed to Plaintiff, informing her that "[t]he court ha[d] recently filed [her] affidavit for Voluntary Administration," and that she "now ha[d] the authority to administer [Willie's] property that is listed in the affidavit." (Surrogate's Ct. Letter UNIMERICA 93, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.) The Surrogate's Court Letter further stated that:

> The decedent's assets must be used to pay (in the following order) (1) expenses of administration, (2) reasonable funeral expenses (including reimbursing persons who have advanced funds to pay the funeral bill) and (3) the decedent's debts, including any Medicaid expenses. Any remaining assets are to be paid or transferred to the persons legally entitled thereto.

(*Id.*) Plaintiff also enclosed a copy of her Proof of Death Claim Form and copies of receipts and invoices reflecting funeral expenses paid. (Copy of Pl. Proof of Death Claim Form UNIMERICA 92, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3; Funeral Expenses Invoices & Receipts UNIMERICA 94–96, 112, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.)

Two days later, on September 20, 2017, Plaintiff wrote again to request that Unimerica "distribute a payment in the sum of $6856.39 for funeral expense[s]," and that the "balance of the . . . policy" be payed to the estate. (Letter dated Sept. 20, 2017 UNIMERICA 115, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.) Plaintiff further stated that:

> Per my conversation today with [a Unimerica representative], she stated that the policy proceeds would not be paid to a sister, administrator, or the estate. Contrary to what was stated, [the Facility of Payment Affidavit] does not exclude sister, administrator, or the estate from receiving the policy proceeds.
>
> [Unimerica] has not provided me with their policy in accordance with the beneficiary/facility of payment provision in the above mentioned policy, yet they requested

the affidavit be completed in its entirety and signed before a notary public. To date, they still refuse to provide me with their policy in accordance with the beneficiary/facility of payment provision [i]n the above mentioned policy. Therefore, I . . . retroactively . . . withdraw my consent to release UnitedHealthcare Insurance Company and any of its subsidiaries/affiliates and employees from any/all liabilities in consideration of payment from Group Insurance Policy 304835, Claim Number 200733304.

(*Id.* at UNIMERICA 115–16.)

### e. Internal review of Plaintiff's request

Unimerica internally referred Plaintiff's request for review, as indicated by a "Legal Question Referral Form" dated September 20, 2017, asking for a determination as to whether Unimerica was "to pay the proceeds to [Willie's] estate based on the document from Suffolk County Surrogate's Court dated [September 14, 2017]," naming Plaintiff as the Voluntary Administrator of the estate, and advising that "[two] of the [four] surviving children have already been paid their portion of the proceeds." (Legal Question Referral Form UNIMERICA 113, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.) The referral further noted that the "[p]olicy states if no beneficiary, we will pay the estate or, at our option, to: 1-spouse, 2-natural or legally adopted children in equal shares, 3-estate." (*Id.*)

On October 10, 2017, Judianne Demers, Best Practice Unit Consultant for UnitedHealthcare, emailed Daniel Roe and Rachel Beaulier, stating she had a "new legal referral" for them and requesting their assistance "to determine the appropriate payees for a basic life insurance claim in the amount of $15k." (Email dated Oct. 10, 2017 UNIMERICA 128–29, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.) In the email, Demers summarized the claim details and timeline and attached relevant documents for review. (*Id.*) Demers explained that:

the claim was initiated by the sister/estate administrator, [Plaintiff]. Because no beneficiaries were named, we asked that [Plaintiff] complete an Affidavit disclosing all potential heirs. She identified [four] legally adopted children. Upon receipt, we proceed[ed] to contact [two] of the [four] (addresses provided) and attempted to locate the remaining [two]. Proceeds had already been paid to the first [two] children when the sister demanded that all proceeds be paid to her as the administrator of the estate/caretaker for her brother/payer of the funeral home bill.

(*Id.*)

### f. Plaintiff's request for a written decision on her claim

By letter dated October 11, 2017, Plaintiff again contacted Unimerica, stating that "[t]o date [she had] not received any written correspondence regarding [her] claim."[13] (Letter dated Oct. 11, 2017 UNIMERICA 130, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.) Plaintiff stated that "[d]espite [Unimerica] stating that administrators, sisters, and estate do[] not receive any proceeds from a group life insurance policy [she had] been advised" that (1) "[a]nything not specifically name[d] and bequeath[ed] to a designated beneficiary becomes part of an estate if the policy is not left to a designated beneficiary"; (2) "[g]roup life policies contain a 'Facility of Payment' clause" providing that if there is no beneficiary on file at the time of the

---

[13]  At some point prior to October 13, 2017, Plaintiff also contacted the Consumer Assistance Unit ("CAU") of the New York State Department of Financial Services to file a complaint in connection with her claim for life insurance benefits. (*See* Letter to Pl. from CAU dated Oct. 13, 2017 UNIMERICA 167 (thanking Plaintiff for contacting the CAU and asking her to provide a statement detailing the nature of her complaint), annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.) Plaintiff subsequently submitted a detailed statement of her complaint dated October 30, 2017, along with supporting documents, (CAU Compl. UNIMERICA 168–90, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4), which the CAU investigated, (*see* Letter to Unimerica from CAU dated Nov. 16, 2017 UNIMERICA 164–66, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4; CAU Investigation Emails UNIMERICA 191–202, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4). Unimerica appears to have cooperated with the investigation. (*See* Letter to CAU from Unimerica dated Nov. 30, 2017 UNIMERICA 269–71, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.)

insured's death, "the insurer may make payment to anyone who appears to be entitled to the death benefit due to their willingness to assume the insured party's medical bills or burial expenses"; and (3) the "Facility of Payment Provision . . . allows for a portion of the death benefit to be paid to an individual who is not specifically designated as the beneficiary," typically in "a dollar amount stipulated in the group contract to an individual who is responsible for paying funeral costs and/or associated costs associated with the illness or death of the employee." (*Id.*) Noting that she had only received a "verbal[] state[ment]" of Unimerica's "position regarding payment," Plaintiff requested a "written response as to why [her] claim was denied or [had] not been expedited." (*Id.* at UNIMERICA 131.) Plaintiff also stated that "[a]s a claimant," she was "entitled to know" what "Unimerica's policies [were] regarding [its] facility of payment clause [and its] facility of payment provision," neither of which had yet been "fully disclosed." (*Id.*)

### g. Benefits awarded to Bruce and Bayquan

On October 27, 2017, Takia informed Unimerica that she and her sister had "track[ed] down" their brothers, Bruce and Bayquan. (Fax Cover Sheet dated Oct. 27, 2017 UNIMERICA 134, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.) She also enclosed for Unimerica's review Request and Proof of Death for Group Life Insurance claim forms by Bruce and Bayquan, in which each stated that he was Willie's son. (Req. & Proof of Death for Group Life Insurance by Bruce Campbell UNIMERICA 135, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4; Req. & Proof of Death for Group Life Insurance by Bayquan Campbell UNIMERICA 140, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.) Takia also included General Power of Attorney forms from both Bruce and Bayquan, authorizing her to act

as their legal representative.[14]  (Power of Attorney Form by Bruce Campbell UNIMERICA 136–39, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4; Power of Attorney Form by Bayquan Campbell, UNIMERICA 141–44, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.)  Unimerica subsequently approved both claims, and issued checks to Bruce and Bayquan for $3758.99 and $4759.69, respectively.[15]

### h.  The initial denial of Plaintiff's claim

On November 16, 2017, Unimerica wrote to Plaintiff to inform her that it had "concluded that [Willie's life insurance] proceeds [were] not payable to the estate" (the "Initial Denial").[16] (Initial Denial UNIMERICA 152, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.) Unimerica explained that "[p]ayment of the life insurance proceeds [is] governed by the terms of [the] policy" "under which [Willie] was insured," and outlined the "relevant payment provisions."  (*Id.*)  Pursuant to both the "Death Benefits" and "Payment of Claim" provisions of the Policy, Unimerica was to distribute the proceeds "in accordance with the beneficiary section."  (*Id.* at UNIMERICA 152–53.)  Under the "Beneficiary" provision, "[i]f there is no

---

[14]  Both Bruce and Bayquan were incarcerated at the time.  (Fax Cover Sheet dated Oct. 27, 2017 UNIMERICA 134, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.)

[15]  (Letter to Bruce Campbell dated November 6, 2017 UNIMERICA 149, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4; Letter to Bayquan Campbell dated Nov. 14, 2017, UNIMERICA 155, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4; Deposited Check Payable to Bruce Campbell UNIMERICA 284, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4; Deposited Check Payable to Bayquan Campbell UNIMERICA 283, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.)

[16]  On November 2, 2017, Roe emailed Demers, stating that he had "reviewed the facts in this claim and the corresponding policy" and concluded that Unimerica had "paid the two adopted children in a manner that follows the policy provisions," and that if Unimerica were to "proceed to pay the next two adopted children from the remainder of the proceeds rather than paying all of the funds to the estate," that "process" would also be "in a manner that follows the policy provision."  (Email dated Nov. 2, 2017 UNIMERICA 145, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.)

named beneficiary living at the Covered Person's death, [Unimerica] will pay any amount due to the estate or, at [Unimerica's] option, to his: 1. legal spouse; 2. natural or legally adopted children in equal shares; or 3. estate. . . ." (*Id.* (fourth alteration in original).)

Unimerica explained that upon receipt of the Facility of Payment Affidavit from Plaintiff, "advising [it] that there was no surviving spouse but there were four adopted children," Unimerica "began to follow [its] established claim payment practices." (*Id.* at UNIMERICA 153.) The Initial Denial noted that "[i]t was not until more than two weeks after receipt of the [Facility of ] Payment Affidavit that [Plaintiff] provided [it] with copies of [her] appointment as the Estate Administrator and demand for payment to the estate." (*Id.*) Having reviewed its "actions," Unimerica had "concluded that [it had] paid the claim according to the policy provisions," a copy of which it was enclosing for Plaintiff's reference, and accordingly was "unable to consider [her] claim for . . . benefits." (*Id.*) Unimerica informed Plaintiff that she could appeal its decision and that she was entitled to "a full and fair review" pursuant to ERISA, and explained the procedures for filing such an appeal. (*Id.*)

Also on November 16, 2017, Unimerica notified WE Transport that Willie's life insurance claim had been closed and that Unimerica had not been "able to approve benefits to [Plaintiff] as she [was] not the beneficiary." (Letter dated Nov. 16, 2017 UNIMERICA 151, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4.)

### i. Plaintiff's appeal of the Initial Denial

By letter dated November 26, 2017, Plaintiff appealed the Initial Denial (the "November 26, 2017 Letter"). (Nov. 26, 2017 Letter UNIMERICA 272–75, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-5.) Plaintiff stated her understanding of various provisions of New York law regarding insurance claims, and argued that Unimerica could not deny that it had "imputed

knowledge that a will existed and an estate would be opened," based on the Facility of Payment Affidavit. (*Id.* at UNIMERICA 272–73.) Plaintiff further argued that Unimerica had "imputed knowledge," as of September 18 and 20, 2017, "that she disagreed with their decision," and that she had given Unimerica "written notice to pay her for funeral expenses [and] to remit the balance to [Willie's estate]." (*Id.* at UNIMERICA 273.)

Turning to the beneficiary provision of the Policy, Plaintiff argued that this provision did not apply, apparently interpreting the provision to apply only where a beneficiary had been designated but was no longer living at the time of the insured's death. (*See id.* at UNIMERICA 274–75.) Because Willie "never named any beneficiary . . . the life insurance proceeds would pass to [his] estate," as "[a]nything not specifically named and bequeath[ed] to a beneficiary becomes a part of the estate." (*Id.* at UNIMERICA 275.) Plaintiff alleged that Unimerica had "engaged in unfair claims settlement practice by improperly misrepresenting facts and policy provisions relating to death benefits and not attempting in good faith to effectuate prompt, fair, and equitable settlement of the submitted death claim in which liability had become reasonably clear." (*Id.*)

### j. The denial of Plaintiff's appeal

On January 18, 2018, Unimerica informed Plaintiff that it had reviewed "the claim . . . and found that the original claim decision was processed appropriately in accordance with the provisions of the policy" (the "Appeal Denial").[17] (Appeal Denial UNIMERICA 277–78, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-5.) Unimerica stated that, upon receipt of the November 26, 2017 Letter, "an independent appeal review [had] commenced," and

---

[17] Due to a clerical error, the Appeal Denial is dated January 18, 2017. (*See* Defs. Statement of Material Facts Pursuant to Local R. 56.1 ("Defs. 56.1") ¶ 52 n.2, Docket Entry No. 34-7.)

explained to Plaintiff that despite her understanding of "the law governing the payment of this claim," the "policy under which [her] brother was insured, and thereby this claim, is governed under ERISA . . . a federal regulation or law [that] supersedes state jurisdiction or law." (*Id.* at UNIMERICA 277.) Unimerica further explained that:

> The policy is clear, when a beneficiary is not named [Unimerica] can . . . at [its] option pay benefits to[] the spouse, children or estate. [Unimerica] exercised [its] option, consistent with [its] normal claims process, and paid benefits in the order outlined by the policy. Accordingly, benefits have been paid appropriately and are not payable to the estate.
>
> As [a] result, we have made the decision to uphold the original claim determination.

(*Id.* at UNIMERICA 277–78.) Unimerica further informed Plaintiff that she was "entitled to receive, upon request and without charge, reasonable access to copies of all documents, records or other information . . . relevant to [her] benefit determination," and that she had a "right to bring a civil suit under section 502(a) of [ERISA]." (*Id.* at UNIMERICA 278.)

In response to the Appeal Denial, Plaintiff wrote again to Unimerica, reiterating her position that the Policy's beneficiary provision "clearly only covers the situation [in] which the named beneficiary is not alive at the time of the insured's death," and that "[i]f there is no named beneficiary and [there is] a will, proceeds should be paid to the decedent's estate to be distributed according to the will." (Letter dated Feb. 18, 2018 UNIMERICA 280, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-5.) Plaintiff further requested that Unimerica "identify who they made payment to" and provide "copies of all documents, records or other information regarding the [Claim]." (*Id.*)

By letter dated April 12, 2018, Unimerica informed Plaintiff that it had "reviewed the file and [had] not [found] any documentation to support [her] contention that [she was] advised that

the proceeds of the [l]ife [i]nsurance benefits would be payable to the estate." (Letter dated Apr. 12, 2018 UNIMERICA 282, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-5.) Unimerica further stated that it had "reviewed [Plaintiff's] claim and subsequent appeal and determined the claim was handled appropriately," and that this "determination [was] final" and it would "not review this matter further." (*Id.*) As to Plaintiff's "request for claim documentation and to identify the recipient of the benefits," Unimerica informed Plaintiff that "this information is considered confidential and due to privacy laws [could not] be released to [Plaintiff]." (*Id.*)

## II. Report and recommendation

Judge Bloom recommended that the Court grant Defendants' motion for summary judgment. (*See generally* R&R.)

Judge Bloom first determined that because the "Plan expressly grants Unimerica 'discretionary authority' to construe the terms of the Plan to determine eligibility for benefits, the Court should apply the arbitrary and capricious standard of review to [P]laintiff's challenge regarding the denial of benefits." (*Id.* at 12.) Applying this deferential standard of review, Judge Bloom then found that "Defendants' denial of [P]laintiff's claim for Willie's life insurance benefits was not arbitrary and capricious." (*Id.* at 14.) In reaching this conclusion, Judge Bloom reasoned that "Unimerica exercised its option to disburse the benefits to Willie's four adopted children in accordance with the Plan," which did not "require[] Unimerica to pay the Plan proceeds in any particular order." (*Id.*) Judge Bloom noted that "Unimerica escalated [P]laintiff's concerns to its legal department, which, upon review . . . ultimately concluded that the proceeds were paid to . . . Willie's adopted children 'in a manner that follows the policy provisions.'" (*Id.* (quoting Email dated Nov. 2, 2017 UNIMERICA 145, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-4).) Judge Bloom further noted that "both during the initial

denial and on administrative appeal, Unimerica explained how it exercised discretion to disburse the proceeds to Willie's adopted children." (*Id.*)  Addressing the "numerous arguments" made by Plaintiff to "demonstrate that Unimerica's denial of her claim was arbitrary and capricious," Judge Bloom found that none were persuasive.[18] (*Id.* at 15.)

In addition, Judge Bloom recommended that the Court grant Defendants' summary judgment motion as to Plaintiff's remaining ERISA claims for (1) breach of fiduciary duty pursuant to section 502(a)(3), (2) statutory penalties for nondisclosure pursuant to section 502(c)(1), and (3) full and fair review pursuant to section 503(2).[19] (*Id.* at 17–21.)  Judge Bloom found that Plaintiff's breach of fiduciary duty claim fails because Plaintiff "seeks monetary damages, the same damages sought under her Section 502(a)(1)(B) claim." (*Id.* at 18.)  As to Plaintiff's claim for statutory damages based on Unimerica's "alleged nondisclosure of certain information," Judge Bloom found that (1) "[P]laintiff's telephone requests to Unimerica were not proper requests under . . . ERISA," as they were not in writing, (2) Unimerica cannot be held liable under section 502(c)(1)(B) because it is not the plan administrator, and (3) even if Plaintiff had properly requested the documents from the Plan Administrator, the Director of Human

---

[18]  Judge Bloom considered (and rejected) the following arguments made by Plaintiff: (1) Plaintiff "'was led to believe' that completing the Facility of Payment Affidavit would expedite her claim for life insurance benefits," (R&R 15 (quoting Pl. Opp'n 7)), (2) "[D]efendants failed to verify the adopted status of Jeanelle, Takia, Bruce, and Bayquan," (*id.*), (3) "Unimerica created competing claims by disbursing the life insurance proceeds to Jeanelle, Takia, Bruce, and Bayquan, and . . . failed to file an interpleader with the Court," (*id.* at 16), and (4) two different conflicts of interest are present, (*id.* at 16–17).

[19]  Because Plaintiff "concedes that she is not entitled to any relief" under sections 502(a)(2), 502(1), and 511 of ERISA, Judge Bloom did not address these claims.  (R&R 18.) Judge Bloom also recommended that the Court find that Plaintiff's claim under section 502(d)(2) of ERISA, raised for the first time in her opposition to Defendants' summary judgment motion, fails because section 502(d)(2) concerns the enforcement of money judgments against employee benefit plans and Plaintiff has not otherwise shown that she is entitled to relief on any of her ERISA claims.  (*Id.* at 18 n.15.)

Resources for WE Transport, Plaintiff was not entitled to the documents she sought, which included "information about the beneficiaries [and] other claim documents" not covered by the statute. (*Id.* at 19–20.) In recommending that the Court deny Plaintiff's full and fair review claim, Judge Bloom observed that "the record reflects that Unimerica evaluated the information [P]laintiff provided, followed its procedure to disburse the life insurance proceeds as set forth in the Plan, timely denied [P]laintiff's claim, timely denied [P]laintiff's appeal after an independent review, and notified [P]laintiff of its reasoning." (*Id.* at 21.) Accordingly, Judge Bloom found, Plaintiff was "not entitled to relief under Section 503(2)." (*Id.*)

Finally, Judge Bloom recommended that, because the Court should grant Defendants' summary judgment motion, "the Court need not address whether WE Transport is a proper defendant in this action." (*Id.*)

## III. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016)

(holding that "general objection[s] [are] insufficient to obtain de novo review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

### ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The court must "'constru[e] the evidence in the light most favorable to the non-moving party' and 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational

juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Objections to the R&R

Plaintiff objects to Judge Bloom's recommendation that the Court grant Defendants' motion for summary judgment, based on "(1) factual findings, [(2)] omitted material facts, [and] (3) omitted documents in the Administrative Record." (Pl. Obj. 1–2.)

Plaintiff objects to, *inter alia*, the R&R's findings that: (1) Unimerica's benefits determination should be reviewed under the arbitrary and capricious standard of review, (*id.* at 22, 24); (2) Unimerica distributed the policy proceeds in a manner that followed the provisions of the Policy, (*id.* at 31–32); (3) Plaintiff's breach of fiduciary duty claim seeks damages identical to her claim under section 502(a)(1)(B), and thus should fail, (*id.* at 32–33, 37); (4) Plaintiff's claim for statutory nondisclosure damages should be dismissed, (*id.* at 37–38); (5) Plaintiff is not entitled to relief on her full and fair review claim, (*id.* at 38–39); and (6) the Court need not consider whether WE Transport is a proper defendant in this litigation, (*id.* at 39–40, 44–45). Plaintiff argues, *inter alia*, that the Court should deny Defendants' motion "based on the incomplete administrative record and their failure to provide the Court or [P]laintiff with the 'ENTIRE GROUP CONTRACT.'" (*Id.* at 47.)

The Court notes that Plaintiff's objections to the R&R are largely repetitive of the arguments made in her opposition papers, or are otherwise conclusory or hard to follow. However, in light of Plaintiff's *pro se* status, the Court reviews the findings and recommendations in the R&R *de novo*.

### c.   Section 502(a)(1)(B) claim

Section 502(a)(1)(B) of ERISA provides that a "civil action may be brought . . . by a participant . . . to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  "A claim for benefits under ERISA is the assertion of a contractual right." *Knopick v. Metro. Life Ins. Co.*, 457 F. App'x 25, 28 (2d Cir. 2012) (citing *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002)).  "To adjudicate" a claim under section 502(a)(1)(B), "a court necessarily must identify the terms of the plan." *Feifer*, 306 F.3d at 1208 (citation and internal quotation marks omitted).  "In interpreting plan terms for purposes of claims under [section 502(a)(1)(B)]," the Second Circuit applies the "federal common law of contract, informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions." *Id.* at 1210.  Under ERISA, "[t]he plan's sponsor (*e.g.,* the employer) . . . creates the basic terms and conditions of the plan [and] executes a written instrument containing those terms and conditions." *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011).  "The plan's administrator . . .  manages the plan, follows its terms in doing so, and provides participants with the summary documents that describe the plan (and modifications) in readily understandable form." *Id.*

### i.   Standard of review

Defendants argue that the Court should review the benefits decision challenged by Plaintiff under the deferential arbitrary and capricious standard of review because "the Plan grants Unimerica 'discretionary authority to determine the Covered Person's or Dependent's eligibility, if applicable, for benefits and to interpret the terms and provision of the Policy.'" (Defs. Mem. 12 (quoting Plan Document UNIMERICA 11).)

Plaintiff contends that the Court should review Unimerica's decision to deny her benefits

*de novo*. (Pl. Obj. 22.) In support, she argues that (1) the "claims administrator [was not] given (full) discretionary authority,"[20] (*id.*), (2) "the 'Policy' is not part of the administrative record," and "[t]herefore the Court or [Plaintiff] cannot determine if the application of arbitrary and capricious [review] is applicable in this litigation," (*id.* at 24), and (3) the provision granting "discretion is not contained in the Summary Plan Description," (Pl. Opp'n 6).

"When a plaintiff asserts a claim for benefits due, [federal courts] review the plan administrator's decision de novo unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case an arbitrary and capricious standard applies." *In re DeRogatis*, 904 F.3d 174, 187 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Halo v. Yale Health Plan*, 819 F.3d 42, 51 (2d Cir. 2016) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989))); *see also S.M. v. Oxford Health Plans (N.Y.), Inc.*, 644 F App'x 81, 83 (2d Cir. 2016) ("An administrator's decision to deny benefits is ordinarily reviewed de novo; but if, as here, written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." (internal quotation marks omitted) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995))); *Locher v. Unum Life Ins. Co. of Am.*, 389 F. 3d 288, 293 (2d Cir. 2004) ("Where an

---

[20] Plaintiff's argument that the Plan did not give "(full) discretionary" authority to Unimerica appears to stem from the perceived discrepancy between Defendants' summary of the provision and the text of the provision itself. (*Compare* Defs. 56.1 ¶ 3 ("Unimerica served as the Plan's life insurance claims administrator, with full discretionary authority to determine eligibility for life insurance benefits under the plan and with authority to pay covered life insurance benefits under the Plan."), *with* Plan Document UNIMERICA 11 ("When making a benefit determination under the policy We have discretionary authority to determine the Covered Person's or Dependent's eligibility, if applicable, for benefits and to interpret the terms and provisions of the Policy."); *see also* Pl. Resp. to Defs. 56.1 ¶ 3 (stating that the "GROUP LIFE CERTIFICATE does not give the claims administrator **[FULL]** discretionary authority," and that the "word [full] is not contained in the section" (brackets in original)), Docket Entry No. 32.)

ERISA plan does not accord an administrator 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' a district court reviews all aspects of an administrator's eligibility determination, including fact issues, *de novo*." (footnote omitted) (quoting *Firestone*, 489 U.S. at 115)); *Garg v. Winterthur Life*, 573 F. Supp. 763, 769 (E.D.N.Y. 2008) ("Following the [Supreme] Court's determination in *Firestone*, the Second Circuit has stated that 'where a plan does confer discretion upon the administrator to determine eligibility or interpret the terms of the plan, the determinations of the administrator are reviewed under an abuse of discretion standard.'" (quoting *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 738 (2d Cir. 2001))).

"As an initial matter, '[t]he plan administrator bears the burden of proving that the deferential standard of review applies.'" *Garg*, 573 F. Supp. 2d at 770 (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002)); *see also Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) ("If the insurer establishes that it has such discretion, the benefits decision is reviewed under the arbitrary and capricious standard." (quoting same)). "A reservation of discretion need not actually use the words discretion or deference to be effective, but it must be clear. . . . In general, language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does." *Krauss*, 517 F.3d at 622 (citation and internal quotation marks omitted) (quoting *Nichols v. Prudential Ins. Co. of America*, 406 F.3d 98, 108 (2d Cir. 2005)).

The Court finds that the arbitrary and capricious standard is the appropriate standard of review to be applied to Unimerica's decision to deny Plaintiff's claim for benefits. The Plan provides that "[w]hen making a benefit determination under the Policy, We have discretionary authority to determine the Covered Person's or Dependent's eligibility, if applicable, for benefits

and to interpret the terms and provisions of the Policy." (Plan Document UNIMERICA 11.)

"We" is defined elsewhere in the Plan as Unimerica. (*Id.* at UNIMERICA 10.) This language

clearly grants discretionary authority to Unimerica, which, pursuant to the Plan, "agree[s] to

provide . . . benefits according to the terms, provisions and limitations of [the Policy]," (*id.* at

UNIMERICA 3). Accordingly, the Court finds that the Plan gives Unimerica discretionary

authority triggering arbitrary and capricious review.

### ii. Unimerica's decision was not arbitrary or capricious

Defendants argue that "Unimerica's denial of Plaintiff's claim . . . was not arbitrary and

capricious because it was reasonably based on substantial evidence in the administrative record."

(Defs. Mem. 14.) In support, Defendants point to the provision of the Policy providing for the

distribution of benefits where "there is no named beneficiary living at the Covered Person's

death," the Facility of Payment Affidavit submitted by Plaintiff, and the fact that, at the time

Unimerica made payments to Takia and Jeanelle, Plaintiff had not yet been appointed

administrator of Willie's estate. (*Id.* at 14–15.)

Plaintiff argues that "Defendant[s'] actions demonstrate that they did not distribute the

avails of Willie's insurance in a manner that follows the Policy provision." (Pl. Obj. 31.) In

support, Plaintiff argues that "there are no written provisions in their [Plan] that states they have

an option to take the actions they executed in processing [Plaintiff's] claim when there is no

beneficiary on file."[21] (*Id.* at 31.) Plaintiff further argues that (1) "Willie died without a

beneficiary because of inadequate recordkeeping by WE Transport," (*id.* at 31 n.13), and that

"[t]his litigation was created/triggered by W[E] Transport when [it] alleged there was no

---

[21] Plaintiff also states, again, that "[D]efendants have not disclosed the 'POLICY' to this
Court or the [P]laintiff." (Pl. Obj. 31.)

beneficiary on file," (Pl. Opp'n 2); (2) Defendants failed to treat "all potential beneficiaries equally," and did not require the "proof" that Takia, Jeanelle, Bruce, and Bayquan were Willie's legally adopted children, (Pl. Obj. 48); (3) Plaintiff "was led to believe that by completing the Facility of Payment form that [Defendants] would expedite her claim for [Willie's] death benefits,"[22] (Pl. Opp'n 3); and (4) Defendants should have filed an interpleader, (*id.* at 5–6).

The arbitrary and capricious standard is a "highly deferential level of review." *Preville v. PepsiCo Hourly Emps. Ret. Plan*, 649 F. App'x 63, 64 (2d Cir. 2016); *see also Halo*, 819 F.3d at 56 (noting the "great deference afforded by the arbitrary and capricious standard"). "In the ERISA context, an administrator's decision is arbitrary and capricious if it is made 'without reason,'" or "is 'unsupported by substantial evidence.'" *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 105 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 557 (2017) (quoting *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008)); *see also Preville*, 649 F. App'x at 64 (noting that a court applying the arbitrary and capricious standard of review "may overturn an administrator's decision to deny ERISA benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law" (quoting *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009))). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010) (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003)).

---

[22] In her objections to the R&R, Plaintiff argues that "the omitted letter from WE Transport, which is not in the Administrative Record . . . demonstrate[s] why she was led to believe her claim would be expedited," and "demonstrates that WE Transport initiated her claim process when they requested[] proof of death, and asked to complete the death benefit claim form." (Pl. Obj. 31.)

"This scope of review is narrow," and courts "are not free to substitute [their] own judgment for that of [the administrator] as if [they] were considering the issue of eligibility anew." *Hobson*, 574 F.3d at 83–84 (quoting *Pagan*, 52 F.3d at 442). Even where "some . . . evidence . . . conflicts with [the administrator's] ultimate conclusion, if the administrator has cited substantial evidence in support of its conclusion, the mere fact of conflicting evidence does not render the administrator's conclusion arbitrary and capricious." *Elizabeth W. v. Empire HealthChoice Assurance, Inc.*, 709 F. App'x 724, 727 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 212 (2d Cir. 2015)).

Under this deferential standard, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley*, 551 F.3d at 132 (quoting *Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 92–93 (2d Cir. 2000)). "Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *Id.*

The Court finds that no jury could reasonably find that Unimerica's decision to deny Plaintiff's claim was either arbitrary or capricious. Contrary to Plaintiff's claim that "there is no written provision covering the circumstances" in this case, (Pl. Obj. 47), and that Unimerica had no authority to distribute the benefits as it did, the evidence in the record demonstrates that Unimerica reasonably interpreted the provisions of the Policy and that its decision was supported by substantial evidence. The Policy provides that the "Covered Person's beneficiary will be the person(s) he names in writing to receive any amount of insurance payable due to his death," and that "[i]f there is no named beneficiary living at the Covered Person's death, [Unimerica] will

pay any amount due to the estate or, at [Unimerica's] option, to his: 1. legal spouse; 2. natural or legally adopted children in equal shares; or 3. estate." (Plan Document UNIMERICA 15.)

As detailed above, after Willie's death, WE Transport informed Unimerica that there was no beneficiary on file.[23] (Aug. 10, 2017 Letter.) Unimerica subsequently asked Plaintiff to fill out the Facility of Payment Affidavit, which it explained was necessary because there was no designated beneficiary on file. (Aug. 17, 2017 Letter.) When Plaintiff completed and signed the Facility of Payment Affidavit, she affirmed that she "underst[ood] that the completion of this form does not guarantee payment under the above policy," and that "if payable, policy proceeds [would] be paid pursuant to the beneficiary/facility of payment provision in the above referenced policy based on the information that I have provided herein." (Facility of Payment Aff. UNIMERICA 74.) Plaintiff further affirmed that she "underst[ood] and agree[d] that the payment of the proceeds . . . under the above referenced group insurance policy [would] be paid . . . pursuant to its term[s] to either [Plaintiff], . . . the surviving relatives of the insured or . . . the insured's estate." (*Id.*) Among the information Plaintiff provided to Unimerica were the names of four of Willie's children, all of whom she indicated were adopted. (*Id.* at UNIMERICA 73.)

---

[23] Plaintiff argues that "WE Transport has not produce[d] any records for the duration of [Willie's] employment that they maintained any beneficiary designation records." (Pl. Opp'n 2.) Plaintiff cites no authority to suggest that WE Transport is required to produce such records, and the Court is aware of none. Plaintiff further argues that WE Transport "cannot allege that [Willie] did not submit a beneficiary designation form for the first time in this summary judgment motion." (*Id.*) However, as discussed above, throughout the claims process, WE Transport has maintained that it did not have a designated beneficiary on file for Willie's life insurance policy. Plaintiff further argues that "[f]ailure to maintain beneficiary records on file effectively caused both [Defendants] to incorrectly apply the terms and provisions of the policy so payments could be made to unnamed beneficiaries to the detriment of [Willie's] Estate and to Plaintiff (payer of his funeral)." (*Id.*) Plaintiff points to no evidence to support her claim that WE Transport failed to properly maintain beneficiary records effectively, other than her belief that she was the designated beneficiary based on her brother having "informed" her, "prior to his death," that "she was the beneficiary of his insurance policy with WE Transport." (*Id.* at 15.)

Within a week of receiving the Facility of Payment Affidavit from Plaintiff, and based on the information provided therein, Unimerica contacted two of Willie's adopted children, Takia and Jeanelle, about the Claim, (Aug. 30, 2017 Letters), and, after receiving the required paperwork, determined they were both eligible for benefits in connection with the Claim, (*see* Letter to Jeanelle Campbell dated Sept. 8, 2017; Letter to Takia Campbell dated Sept. 12, 2017). Eventually, Unimerica distributed the remaining proceeds to Bruce and Bayquan. (Letter to Bruce Campbell dated Nov. 6, 2017; Letter to Bayquan Campbell dated Nov. 14, 2017.) As Defendants note, at the time Unimerica awarded benefits to Takia and Jeanelle, Plaintiff had not yet been appointed administrator of Willie's estate.[24]

In distributing the proceeds of the Claim to Willie's four adopted children, Unimerica appropriately exercised its "option" to "pay any amount due" to the insured's "natural or legally adopted children in equal shares." (Plan Document UNIMERICA 15.) While the Court is sympathetic to Plaintiff's frustration with the claims process and the significant financial burden she now bears, the Court finds that Plaintiff has not created a triable issue of fact as to whether Unimerica acted arbitrary or capriciously in denying her claim.

Accordingly, the Court grants Defendants' summary judgment motion as to Plaintiff's claim under section 502(a)(1)(B).

### d. Plaintiff's remaining ERISA claims

Defendants argue that Plaintiff "has failed to articulate any grounds for . . . relief" as to her remaining ERISA claims, and that, in any case, she "is not entitled to any recovery against

---

[24] (*See* Surrogate's Court Letter (informing Plaintiff, on September 14, 2017, that "[t]he court ha[d] recently filed [her] affidavit for Voluntary Administration," and that she "now ha[d] the authority to administer [Willie's] property that is listed in the affidavit"); Letter to Jeanelle Campbell dated Sept. 8, 2017; Letter to Takia Campbell dated Sept. 12, 2017.)

the Defendants pursuant to" these additional claims.  (Defs. Mem. 15.)

### i.    Section 502(a)(3) claim for breach of fiduciary duty

Defendants argue that Plaintiff has not established a claim for breach of fiduciary duty

under section 502(a)(3) "because such relief is not distinct from, and is merely duplicative of,

Plaintiff's claim for benefits under [section] 502(a)(1)(B)."  (Defs. Mem. 16.)

Plaintiff argues that the "issue here is not the relief she seeks but the violation she

alleges."  (Pl. Obj. 32–33.)  Plaintiff further argues that she "believes [D]efendants violated the

discretionary clause" and "the facility of payment clause, and misrepresented the policy

coverage," and that "WE Transport breached [its] duty by failing to disclosed required records

upon written request."  (*Id.* at 33.)

Section 502(a)(3) "allows plan participants, beneficiaries, or fiduciaries to bring civil

actions to enjoin any act or practice that violates ERISA or to obtain other 'appropriate equitable

relief' to redress the violation."  *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 746 (2d

Cir. 2019) (quoting 29 U.S.C. § 1132(a)(3)).  "[S]ection 502(a)(3) requires *both* that the 'basis

for the claim' *and* the 'nature of the recovery' sought be equitable."  *Coan v. Kaufman*, 457 F.3d

250, 264 (2d Cir. 2006) (alteration omitted) (citing *Sereboff v. Mid Atlantic Med. Servs., Inc.*,

547 U.S. 356, 362–63 (2006)).  The Second Circuit has noted that section 502(a)(3) "permits

money awards only in very limited circumstances," and "[c]lassic compensatory and punitive

damages are never included within 'other appropriate equitable relief.'"  *Gerosa v. Savasta &*

*Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255

(1993)).

As a remedy for Defendants' alleged violations of ERISA, Plaintiff seeks distribution of

"death benefits" to Willie's estate, and to Plaintiff, to cover the funeral costs.[25]  (Compl. 7.)  In

other words, Plaintiff seeks compensatory damages.  Accordingly, the Court grants Defendants'

motion for summary judgment as to Plaintiff's section 502(a)(3) claim.

### ii.  Section 502(c)(1) claim for statutory nondisclosure penalties

Defendants argue that Plaintiff's claim that Defendants failed to disclose records to

Plaintiff in violation of section 502(c)(1) must also fail.  (Defs. Mem. 16.)  In support,

Defendants argue that (1) "Unimerica is a Plan <u>fiduciary</u> and not the Plan Administrator," and

thus "cannot be liable for statutory penalties under [section 502(c)] as a matter of law," (2) "there

is no evidence in the administrative record to support any claim[] that Plaintiff ever submitted a

written request for a copy of the latest updated summary plan description ('SPD') to the Plan

Administrator," (3) the statute "does not provide for any sanction for the Plan Administrator's

failure to provide the kind of information Plaintiff alleges was withheld here," and (4) "it is well-

established that 'a participant or beneficiary is not entitled to civil penalties for a plan's failure to

comply with the claims-procedure regulation.'"  (*Id.* at 16–17 (quoting *Halo*, 819 F.3d at 61).)

Plaintiff argues that Defendants "were required to produce all records pertaining to

claims for benefits" to Plaintiff, "[a]s an equitable beneficiary of the avails from [Willie's]

insurance."  (Pl. Obj. 38.)  Plaintiff further argues that "Defendants failed to disclose any

document[s] until [Judge Bloom] ordered Uni[]merica" to produce the administrative record "in

December [of] 2017," and that "WE Transport has not submitted any correspondences to the

Court or [P]laintiff."  (*Id.*)

---

[25]  The Complaint also seeks an order directing Defendants to "give [P]laintiff all records
in their files relating to death benefit claim(s) of decedent WILLIE CAMPBELL including who
disbursements were to, when . . . disbursement [were] made, and [the] amount(s) of
disbursements," (Compl. 7), a request the Court finds has been rendered moot by this litigation.

Under section 502(c)(1),

> [a]ny administrator . . . who fails or refuses to comply with
> with a request for any information which such administrator
> is required by this subchapter to furnish to a . . . beneficiary
> . . . by mailing the material requested to the last known
> address of the requesting . . . beneficiary within [thirty] days
> after such request may in the court's discretion be personally
> liable to such participant or beneficiary in the amount of up
> to $100 a day from the date of such failure or refusal, and the
> court may in its discretion order such other relief as it deems
> proper.

29 U.S.C. § 1132(c)(1).  Pursuant to section 104(b)(4) of ERISA, an "administrator shall, upon

written request of any . . . beneficiary, furnish a copy of the latest updated summary[] plan

description, and the latest annual report, any terminal report, the bargaining agreement, trust

agreement, contract, or other instruments under which the plan is established or operated."  29

U.S.C. § 1024(b)(4).

Assuming without deciding that Unimerica could be liable under section 502(c)(1), the

Court finds that Plaintiff has not shown she is entitled to statutory damages.  On several

occasions, Plaintiff spoke to Unimerica representatives on the telephone and requested certain

information and records;[26] as these requests were not in writing, they did not constitute proper

---

[26]  During a September 18, 2017 telephone call, Plaintiff asked Unimerica to tell her who
the beneficiaries of the Claim were and asked for a copy of the Claim file.  (Call Note No. 10
dated Sept. 18, 2017 UNIMERICA 33, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-
3.)  Plaintiff was advised that information about the identities of the beneficiaries was
"confidential," and that Unimerica could not release the Claim file to her.  (*Id.*; *see also* Call
Note No. 11 dated Sept. 18, 2017 UNIMERICA 33, annexed to Demers Decl. as Ex. B, Docket
Entry No. 34-3 (noting that Plaintiff was told that Unimerica could not disclose the identities of
beneficiaries to her "due to privacy laws").)  Plaintiff was further advised that "if she [was]
requesting claim documentation she should request this in writing."  (Call Note No. 10 dated
Sept. 18, 2017.)  During a September 19, 2017 telephone call, Plaintiff stated that "she should be
entitled to the policy information" because Unimerica had written to her asking for information
since there was no beneficiary on file.  (Call Note No. 15 dated Sept. 19, 2017 UNIMERICA 34,
annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.)  During a September 20, 2017
telephone call, Plaintiff asked Unimerica to tell her what "the order of benefits [was] for the

requests under section 104(b)(4).  To the extent Plaintiff requested information from Unimerica in writing, the Court finds Unimerica either provided that information or was not required to do so.  By letter dated September 20, 2017, Plaintiff stated that Unimerica had "not provided [her] with their policy in accordance with the beneficiary/facility of payment provision in the above mentioned policy," despite having "requested the [Facility of Payment Affidavit] be completed in its entirety and signed before a notary public."  (Letter dated Sept. 20, 2017 UNIMERICA 115; *see also id.* ("To date, [Unimerica] still refuse[s] to provide me with [its] policy in accordance with the beneficiary/facility of payment provision in the above mentioned policy.").)  By letter dated October 11, 2017, Plaintiff requested a "written response regarding the status of the [Claim]," and stated that "to date [Unimerica had] not fully disclosed what Unimerica's policies are regarding [its] facility of payment clause nor [its] facility of payment provision in the aforementioned policy," which, "[a]s a claimant," Plaintiff was "entitled to know."  (Letter dated Oct. 11, 2017 UNIMERICA 131.)

In the Initial Denial, Unimerica quoted from the applicable provisions of the Policy, including both the "Death Benefits" and "Payment of Claim" provisions, which provided that benefits would be paid "in accordance with the beneficiary section."  (Initial Denial UNIMERICA 152.)  Unimerica also quoted the "Beneficiary" provision, including but not limited to the language in the provision discussed above, governing how benefits are paid under the Policy when "there is no named beneficiary living at the Covered Person's death."  (*Id.* at UNIMERICA 152–53.)  In Plaintiff's subsequent written communications to Unimerica, she did not repeat her complaint that Unimerica had not disclosed its policies governing the payment of

_____

policy," and was told that "sister is not an order in the policy."  (Call Note No. 14 dated Sept. 20, 2017 UNIMERICA 34, annexed to Demers Decl. as Ex. B, Docket Entry No. 34-3.)

the Claim, but rather argued that the provisions of the Policy were not being properly applied. (*See* Nov. 26, 2017 Letter UNIMERICA 274–75; Letter dated Feb. 18, 2018 UNIMERICA 280.)

In her final letter to Unimerica, Plaintiff wrote that she was "requesting copies of all documents, records or other information regarding the aforementioned claim," and that Unimerica "identify who they made payment to." (Letter dated Feb. 18, 2018 UNIMERICA 280.) In response, Unimerica wrote that "[i]n regards to [Plaintiff's] request for claim documentation and to identify the recipient of the benefits, this information is considered confidential and due to privacy laws [could not] be released to [Plaintiff]." (Letter dated Apr. 12, 2018.)

Plaintiff has not identified any authority for the proposition that Unimerica was required to disclose to Plaintiff the identity of the beneficiaries or the documentation and records associated with the Claim, and the Court is not aware of any. As the Second Circuit has held, the catch-all provision in section 104(b)(4) — "other instruments under which [a] plan is established or operated" — refers only to "the formal legal documents that govern or confine a plan's operations, rather than the routine documents with which or by means of which a plan conducts its operations." *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 142 (2d Cir. 1997).

Accordingly, the Court grants Defendants' summary judgment motion as to Plaintiff's section 502(c)(1) claim.

### iii. Section 503(2) claim for full and fair review

Defendants argue that "Plaintiff is not entitled to any equitable relief under [section 503] because this section is not a separate remedial statute." (Defs. Mem. 18.) Defendants further argue that "the administrative record shows that Unimerica provided Plaintiff with adequate

written notice of its initial adverse benefit determination and its final adverse appeal determination, and that it conducted a full and fair review of her administrative appeal." (*Id.*)

Plaintiff argues that she "was not afforded" a full and fair review. (Pl. Obj. 38.) In support, she argues that (1) Defendants did not "disclose any written information regarding their denial of her claim" until November of 2017, (2) "Defendants were required to furnish [Plaintiff] with information [or] documents for her to appeal their decision," (3) Plaintiff was given a "determination letter which included the Certificate of Coverage in which the amount of benefits disclosed [was] $25,000," (4) Defendants have still not disclosed the "Entire Contract," and (5) Plaintiff "had no knowledge of what the administrative record contained until [Judge Bloom] ordered Unimerica to produce it." (*Id.* at 38–39.)

Section 503(2) of ERISA requires that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). "A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review." *Krauss*, 517 F.3d at 630. As discussed in detail above, Unimerica issued a written denial of Plaintiff's claim, laying out the basis for its decision, including the relevant provisions of the Policy, and informing Plaintiff of her right to appeal the decision. (*See* Initial Denial.) After Plaintiff exercised her right to appeal the Initial Denial and an independent review had been conducted, Unimerica issued a written denial of Plaintiff's appeal, again laying out the basis for its decision and informing Plaintiff of her right to file a civil action. (*See* Appeal Denial.)

Accordingly, the Court grants summary judgment as to Plaintiff's section 503(2) claim.

## II.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment.[27]

The Court directs the Clerk of Court to mail a copy of this Memorandum and Order to Collette

Campbell, 23 Massachusetts Ave., Bay Shore, NY 11706.  The Clerk of Court is directed to

close this case.

Dated:  March 31, 2020
       Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

---

[27] Defendants argue that WE Transport is not a proper defendant in a "claim for wrongful denial of benefits under ERISA" because "it delegated discretionary authority to Unimerica to administer benefits under the Plan."  (Defs. Mem. 20.)  Because the Court grants Defendants' motion for summary judgment as to all of Plaintiff's claims, the Court declines to consider this argument.